UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 19 C 641 |
| v. | Judge Thomas M. Durkin |
| DONALD LEE, ET AL, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Defendant Donald Lee is charged with conspiring to engage in a variety of racketeering acts through an enterprise known as the Wicked Town Faction of the Traveling Vice Lords street gang, in violation of 18 U.S.C. § 1962(d). Lee moved to suppress statements he made to law enforcement between July 22 and July 24, 2000, on the grounds that those statements were involuntary. R. 518. An evidentiary hearing was held on August 31, 2022, and the parties submitted post-hearing briefs. For the reasons that follow, the motion is denied.

## Background[1]

On July 22, 2000, Lemont Ware was shot and killed near 5147 W. Ferdinand Street in Chicago. Lee, who was 17 years old at the time, was identified by a witness as the shooter. He was arrested minutes after the shooting. He was Mirandized, taken to Area Five Headquarters, and placed in an interrogation room. At approximately 9:00 p.m. (about two hours after his arrest), Lee was again Mirandized and interrogated for the first time. He spoke with law enforcement but denied shooting anyone. At approximately 1:00 a.m. on July 23, 2000, Lee was interviewed again by police. He denied involvement in the shooting. At some point after 3:00 a.m. on July 23, Lee was given a bologna sandwich.

At 5:00 p.m. on July 23, Lee was given French fries and a soda. At 10:00 p.m., he was again given fries and a drink. During this time, the police were attempting to locate other witnesses to the murder. At 11:30 p.m. on July 23, Lee was interviewed by police and admitted involvement in the shooting. He told law enforcement that a

---

[1] The facts in this Order are based upon the parties' briefs (including post-hearing briefs), as well as the evidence presented at the hearing on August 31, 2022. Two witnesses testified: retired Chicago Police Detective Daniel Engel and former Cook County Assistant States Attorney Eileen Austin (whose last name is now "Murphy," but to maintain uniformity with the notes presented at the hearing, the Court will refer to her as Austin). Neither witness had any first-hand recollection of the arrest and interrogation of Lee, but both the Chicago Police Department and the State's Attorneys Office had a practice of taking notes contemporaneously with or immediately after interviews. Both Austin and Engel testified that they followed that practice in this case, and their notes were admissible as past recollection recorded (with no objection from the defendant) under Federal Rule of Evidence 803(5). Their notes constitute the most reliable evidence of what happened during Lee's detention.

fight broke out over drugs, that he heard gunshots and ran inside his friend's house, and that he ran back outside with a gun and fired one shot.

At this time, Austin was an Assistant State's Attorney assigned to felony review, meaning she approved or rejected bringing charges against individuals. Engel, who conducted Lee's interviews (along with his partner) called Austin after Lee's 11:30 p.m. statement. Austin arrived at Area Five and Mirandized Lee around 2:05 a.m. on July 24, 2000. Lee again admitted his involvement in the murder, providing substantially the same statement he gave at 11:30 p.m. on July 23.

Around 2:00 p.m. on July 24, Lee was given a double cheeseburger, fries, and a soda. At 2:30 p.m., he was Mirandized for a fourth time and interviewed. He provided the same account of his involvement. At this point, the detectives told Lee that several witnesses had identified him as the shooter. This was not true—only one witness had identified Lee. Lee then provided more detail of his involvement. He told the detectives that he previously lied about having heard gunshots, but that he saw a rival gang member with a gun. He then saw his friends getting beat up, and he ran to get a gun he knew was hidden in a nearby yard. When he returned, he shot Ware, who was punching Lee's friend. Lee fired a few more gunshots and ran inside the house at 5145 W. Ferdinand. At 8:30 p.m. on July 24, Lee was Mirandized and provided the same statement to Austin. During every interview, either Engel or his partner took contemporaneous notes. Austin took notes immediately after both of the interviews she conducted.

## Analysis

The voluntariness of a confession is evaluated based on the totality of the circumstances. *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). Under the totality of the circumstances analysis, "no one factor will be dispositive." *Id.* at 764 (citing *Fare v. Michael C.*, 442 U.S. 707, 725-27 (1979)). On a motion to suppress a confession, the burden is on the government to prove by a preponderance of the evidence that the statement was given voluntarily. *Schneckloth*, 412 U.S. at 227. Lee argues his statement was involuntary due to his young age, the length of the interrogation, and the periods of time he went without food.

Lee was 17 years old at the time of this arrest. The parties agree that in July 2000, the police were not under a statutory duty to notify a parent or a concerned adult of Lee's arrest, because the parental notice provision of the Juvenile Court Act of 1987 did not apply to 17-year-olds—rather, the Act had "exclusive jurisdiction" over minors under the age of 17. R. 662 at 1-2; 705 ILCS 405/5-120 (Pub. Act. 90-590, Art. 2001 § 2001-10, eff. Jan. 1, 1999) (providing the parental notice requirement applied to minors prior to their 17th birthday).[2] Moreover, "adult" was defined by the Chicago Police Department as "a person 17 years of age or older" at the time. R. 663-1. Still,

---

[2] Numerous Illinois courts have made this finding. *See, e.g., People v. McArthur*, 2019 IL App (1st) 150626-B, ¶ 31, 158 N.E.3d 241, 250 (finding a 17-year-old defendant fell outside the jurisdiction of the Juvenile Court Act and thus the parental notice provision did not apply to him); *People v. Westmorland*, 372 Ill. App. 3d 868, 880 (2nd Dist. 2007) (defendant not subject to the provisions in the Act because he was 17 when he committed the alleged offenses).

Lee was young, and the Court has considered that in its determination. Although the police were not required to call Lee's parents or a concerned adult, or bring in a youth officer, they could have, and the fact that they failed to do so is a factor to be considered.

Other factors, however, cut significantly against Lee's young age and in favor of a finding of voluntariness. First, there is no indication that Lee asked to call his parents (or anyone, for that matter). Both Engel and Austin testified that had Lee asked for such a phone call, that request would have been reflected in their notes. Lee argues he likely did ask and was denied a phone call, but that is purely speculation given the notes and testimony presented at the hearing. Moreover, Lee was familiar with the criminal justice system. Not only had he been arrested multiple times (and was in criminal court at least two times for drug charges), he was interrogated two other times in 2000 at Area Five prior to this interrogation. Both interrogations were for serious offenses – one was regarding a shooting investigation in which Lee was identified by a witness as the shooter, and the other was regarding a kidnapping in which Lee's car matched a description given by witnesses.[3] R. 663-2; 663-3. The fact that Lee was familiar with law enforcement, and was specifically familiar with interrogations at Area Five for violent crimes, weighs strongly in favor of a finding of voluntariness.

---

[3] The kidnapping case was eventually dismissed against Lee (who was only charged with misdemeanor assault), and no charges were brought for the shooting. But the fact that Lee was not convicted has no bearing on the voluntariness analysis—he was familiar with custodial interrogations, regardless of their legal outcome.

Lee argues the long spans of time he went without food weigh in favor of suppression. It is true that the police could have given Lee more to eat. At one point he went approximately 14 hours without food (between 10:00 p.m. on July 23 until 2:00 p.m. on July 24). Aside from this lengthy break, however, Lee was provided with food with some regularity. Over the 48 hours he was in custody, he was fed four times. The fact that Lee went some hours without eating is not, on its own, enough to warrant suppression here.

Finally, Lee argues Engel's misrepresentation, in which he stated several witnesses had identified Lee as the shooter when only one witness had done so, renders Lee's statement involuntary. The Court has considered Engel's misrepresentation, and finds it is not so severe as to warrant suppression. Lee had been identified as the shooter—that much was accurate. Engel was permitted to mislead Lee during the interrogation so long as the lie did not render the circumstances coercive. *United States v. Ceballos*, 302 F.3d 679, 694 (7th Cir. 2002) (false statement that co-conspirator implicated defendant in the crime was not coercive). *See also Holland v. McGinnis*, 963 F.2d 1044, 1051 (7th Cir. 1992) (police officer's lie that witness saw defendant's car in the alley where the victim was raped was not coercive). Here, the police had compelling evidence that Lee was the shooter. The misrepresentation of the number of eye-witnesses did not render the confession involuntary.

There is no indication Lee was mistreated during his time in custody. There is no reason to think he was deprived of sleep or water, and Engel testified that if a

detainee needed to use the restroom, they were permitted to do so with an escort. Austin testified that it was her practice to inquire as to whether a detainee had been mistreated and, if the answer was yes, she would stop the questioning immediately. That did not happen here, and there is nothing in her notes to indicate Lee voiced concerns over his treatment. Rather, the totality of the circumstances illustrates that the police had no duty to contact Lee's parents, and that Lee was Mirandized four times, was familiar with custodial interrogations and Area Five, was provided food, and was not subject to any physical or mental coercion. The Court finds that his statements to law enforcement were voluntary.

## Conclusion

For the foregoing reasons, the motion to suppress the statements from July 2000, R. 518, is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: September 9, 2022